# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHERRY D. NAQUIN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-1661-MVL-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Sherry D. Naquin ("Naquin"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On July 14, 2004, Naquin submitted an application for disability insurance benefits reporting that she became disabled on January 15, 2004. R. 90-92 and 386-91. On November 9, 2004, the Commissioner determined that she was not disabled. R. 64 and 72-75. On May 9, 2006, there was a hearing before an ALJ. R. 441-466. On June 5, 2006, the ALJ issued an unfavorable decision. R. 65-71. On August 24, 2006, the Appeals Council remanded the case to the ALJ, r. 79, determining that the ALJ's decision did not contain: (1) an adequate evaluation of the May 5, 2005 opinion of Naquin's treating physician, Dr. Terry Delord (R. 244-45); (2) a function-by-function assessment of her ability to do work-related activities; and (3) a properly supported determination that her symptoms were not entirely credible. The Appeals Council also determined that further

evaluation of her mental disorder was necessary.  R. 80-82

On May 2, 2007, there was a hearing before an ALJ.  R. 467-489.  On June 18, 2007, the

ALJ issued an unfavorable decision.  R. 18-32.  On March 11, 2008, the Appeals Council denied

Naquin's request for review.  R. 6-9.

On April 18, 2008, Naquin filed a complaint with this Court.  Rec. doc. 1. The parties

submitted cross-motions for summary judgment.  Rec. doc. 11 and 14.  Naquin was represented by

counsel throughout these proceedings.

## STATEMENT OF ISSUES ON APPEAL

1.      Did the ALJ err by failing to consider all of the evidence from Naquin's treating doctors and
        to present good cause for rejecting the evidence?

2.      Did the ALJ's hypothetical question include all of Naquin's impairments?

3.      Did the ALJ err in failing to determine that Naquin could maintain employment?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.      Naquin meets the insured status requirements of the Social Security Act through June 30,
        2010.

2.      Naquin has not engaged in substantial gainful activity since January 15, 2004, the alleged
        onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.      Naquin has the following severe impairments: degenerative disc disease, lumbar spine, right
        shoulder impingement, and depression (Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), SSR
        96-3p, 20 CFR 404.1520© and 416.920©).

4.      Naquin does not have an impairment or combination of impairments that meets or medically
        equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR
        404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      Naquin has the residual functional capacity for less than the full range of light work, i.e.,
        lift/carry 20 pounds occasionally and 10 pounds frequently stand/walk about 2 hours in an
        8-hour workday; sit for 6 hours in an 8-hour workday and with normal breaks; limited

climbing of ladders, ropes and scaffolds; no overhead reaching with a right upper extremity; no work on uneven surfaces; capable of performing routine, not highly complex jobs; can concentrate and adapt to some work changes; and she is able to work with bosses and co-workers.

6.       Naquin is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.       Naquin was born in 1970 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.       Naquin has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.       Transferability of job skills is not an issue in this case because Naquin's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.      Considering Naquin's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Naquin can perform (20 CFR 404.1560(c), 404.1566, 416.960©, and 416.966).

11.      Naquin has not been under a disability, as defined in the Social Security Act, from January 15, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 24-31.

## ANALYSIS

a.     **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a

reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38

F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.

Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

      The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If he

successfully carries this burden, the burden shifts to the Commissioner to show that other substantial

gainful employment is available in the national economy, which the claimant is capable of

performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989).

When the Commissioner shows that the claimant is capable of engaging in alternative employment,

"the ultimate burden of persuasion shifts back to the claimant."  Id.; accord Selders, 914 F.2d at 618.

      "In determining whether substantial evidence of disability exists, this court weighs four

factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective

medical evidence of pain and disability; and (4) the claimant's age, education, and work history."

Perez v. Barnhart, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve

---

[1]  The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520©, 416.920©.

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

conflicts in the evidence."  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.    **Testimony at the May 9, 2006 Hearing.**

Naquin was born in 1970.  R. 445.  She received a GED.  R. 445.  She lived with her 18 year old daughter and 13 year old son.  R. 450.

Naquin was laid off of her job in October 2003 and drew unemployment benefits until May 2004.  R. 452.  While she was on unemployment she filled out applications at fast food outlets and any place which said it was hiring.  R. 452.  Her last employment was in May 2005 as a cook and deli helper at a convenience store.  R. 445.  She experienced problems at work and missed work because she was in the hospital.  R. 445.  The store went out of business, so she lost her job.  R. 453-54.  She drew unemployment from May 2005 until October 2005.

Naquin suffered from depression, arthritis in her spine, deteriorating discs in her low back, nerve damage in both of her legs, tendinitis, "messed up" ligaments in her right shoulder, minor arthritis in both knees, and teeth problems.  R. 446-47.  She used muscle relaxers, pain pills, and medication for her depression.  R. 449.

Naquin used a cane to help her walk.  R. 447.  She had a handicapped permit for her car.  R. 447.  She had difficulty walking on uneven surfaces; she could not stand for more than ten to fifteen minutes; she had to move a lot when she sat; she could only lift about ten pounds; she did not bend unless it was absolutely necessary; and she could work no more than two hours a day.  R. 447-48.  She took a nap every day.  R. 450.

In response to the hypothetical question, the vocational expert testified that Naquin could work as a cashier, security guard or waitress.  With modifications to the hypothetical question, she would be limited to sedentary work.  R. 457.

c.	__Testimony at the May 2, 2007 Hearing__.

Naquin reported that she had arthritis in her spine, degenerative disc disease and bulging discs.  R. 471.  She experienced pain from the middle of her back which radiated into her legs.  R. 472.  She had numb spots on both of her legs.  R. 472.  On a scale of one to ten, the pain was about a six.  R. 475.  Sometimes she experienced a big knot at the base of her spine and she could not stand up.  R 471.  Sometimes it swelled up while she walked and she would fall down.  R. 471-72.  She sought help at a hospital or from her doctor because of the falls.  R. 473.  At all times she used a cane.  R. 472.  She received therapy for her back but it did not help.  R. 473.

Naquin had pain in her neck and right shoulder.  R. 474.  Because of this pain, she could not wash or brush her hair.  R. 474.  She had a weakness in her right hand.  R. 474.  Her doctor prescribed home exercises and physical therapy for the pain in the neck and right shoulder.  R. 474.  The therapy provided some relief but it did not last.  R. 474.  She had a blockage which prevented calcium from getting to her teeth so they broke.  R. 475.  This caused problems with her speech.  R. 475.  Her height was five feet eight inches, and her weight was 292 pounds.  R. 475.  Her doctor recommended that she loose weight, but she had only lost about six pounds.  R. 475.  Her medication made her drowsy.  R. 476.

She could not walk more than a quarter of a block, stand comfortably for more than fifteen to twenty minutes, sit for more than thirty minutes, use ladders or stairs without suffering a lot of pain, or bend over to tie her shoes.  R. 476.  She could not walk 200 feet.  R. 478.  A gallon of milk was the heaviest thing she could pick up.  R. 477.  She spent about 14 hours during the day lying down or sitting down with her feet up.  R. 477.

Naquin reported that she was afraid and nervous. R. 477. She had problems concentrating and completing tasks. R. 477. She had memory problems. R. 478. She could follow written directions, but could not follow verbal instructions. R. 478.

She went to see Drs. Delord and Vega about every three months. R. 472 and 477.

With the ALJ's hypothetical question, the vocational expert testified that she could not perform her past relevant work. She could perform work at the light duty and sedentary levels. R. 480-81.

d.    **Medical Evidence**.

2003

On March 14, 2003, Naquin was seen by Terry Delord, M.D., with the internal medicine/family practice department at Leonard J. Chabert Medical Center ("Chabert"). She reported chronic pain in her neck and back. R. 217. X-rays of the lumbar spine revealed a narrowing of the disc space at L5-S1 and arthritic changes in the joints. R. 226. On May 17, 2003, she was seen at Chabert's emergency room with the complaint that her body ached. R. 213. On July 17, 2003, she was seen by Dr. Delord for complaints of back pain. R. 207. X-rays of the left and right knees, dated July 17, 2003, were negative. R. 219-20.

On August 30, 2003, Naquin went to the Chabert emergency room and reported a broken finger. She denied any trauma. The diagnosis was a contusion. R. 198. On September 4, 2003, she complained of a pulled muscle. R. 197. On September 23, 2003, she was seen at Chabert for constipation. R. 196. On October 28, 2003, she reported flu like symptoms to Dr. Delord. R. 195. A colonoscopy, taken on October 30, 2003, was normal. R. 194.

X-rays of the lumbar spine, dated November 6, 2003, were negative. R. 230. On December

30, 2003, Naquin called Dr. Delord's nurse and reported she was in a lot of pain and Motrin was not effective. R. 190.

2004

On January 20, 2004, Naquin was seen by Dr. Delord for complaints of back and knee pain. R. 185-88 and 210. On March 23, 2004, she reported to Dr. Delord that her back had "locked up" again. R. 183. X-rays of the lumbar spine, dated March 25, 2004, revealed slight scoliosis on the right in the lumbar spine. R. 229. On March 24, 2004, Naquin reported that her back locked up and she had fallen several times. R. 161.

On June 2, 2004, Naquin was seen at the Chabert emergency room with a report that her back locked up on her. R. 157-59 and 168-70. X-rays of the lumbar spine, dated June 2, 2004, suggested some mild narrowing of the L5-S1 disc space. The remaining disc spaces appeared well maintained. R. 228. A CT scan of the lumbar spine, dated June 10, 2004, revealed disc degeneration at L5-S1, but no evidence of focal herniation. L3-4 and L4-5 appeared normal. R. 227. On June 28, 2004, she was seen at the emergency room with complaints of back pain radiating into her legs. R. 163-66. On July 20, 2004, she was seen for complaints of leg and back pain. R. 180. On August 3, 2004, she was seen at Chabert for a neurology appointment on a referral from Dr. Delord for pain in the low back and legs and numbness. More tests were recommended. R. 179. On August 18, 2004, she was seen at the emergency room with reports of muscle spasms and low back pain. R. 173-76.

On October 26, 2004, Naquin was seen by Christopher Cenac, M.D., an orthopedist, at the request of the Commissioner. She was working as a cook and cashier. She reported chronic low back pain and referred pain down both legs into the feet. The examination found that grip strength testing was symmetrical, the straight leg raise was negative, no muscle spasms, palpitation of the

lumbar spine was non-physiologic, she could heel and toe walk without difficulty, no atrophy in either lower leg, no sensory deficits, and normal reflexes. She carried a cane which was not necessary for ambulation. The x-rays revealed a slight narrowing of the disc space at L5-S1 which was consistent with her age and size. Dr. Cenac found no objective evidence of mechanical dysfunctional or neurological deficits which required physical limitations or restrictions. He concluded that she was employable at any level of physical activity. R. 140-144

On November 19, 2004, Naquin was seen at Chabert with complaints of chronic pain in the low back, hips, legs and knees. R. 154-56.

On November 8, 2004, a medical consultant completed a physical residual functional capacity assessment finding that no limitations were established, that she should be able to complete most work related activities, and that Naquin was only partially credible. R. 236-43.

On December 27, 2004, Naquin was seen at Chabert's emergency room with complaints of pain in her low back and knees. She reported additional pain after falling. R. 150-51.

<u>2005</u>

On January 8, 2005, Naquin was seen at the emergency room with complaints of dental pain. R. 146-48 and 325-28. On February 11 and 12, 2005, she returned to the emergency room with reports of pain in her back, neck and legs and that her back locked-up. R. 324 and R. 320-21. On February 21, 2005, she was seen at Chabert for complaints of falling down as result of her back pain. R. 312-14. On March 4, 2005, she requested a muscle relaxant for the knot in her back. R. 310. On March 23, 2005, she returned to the emergency room with pain in her back, knees, legs and shoulder. R. 305-08.

On March 24, 2005, Naquin went to the emergency room reporting knee pain after a fall.

R. 298-99. X-rays of her right shoulder, taken on March 24, 2005, revealed no significant bony abnormalities. R. 302. X-rays of the left and right knees, taken on March 24, 2005, were negative. R. 300-01. On April 20, 2005, her request for a change in her medication for complaints of knee pain was denied. R. 297.

On May 5, 2005, Dr. Delord completed a report on Naquin's limitations. He found that she could work about two hours per day and that her pain was moderate. She experienced chronic pain in her back and other areas and had an abnormal CT scan. R. 244-45.

On May 26, 2005, Naquin was seen by Dr. Delord for complaints of pain in her back and knees and constipation. R. 293. On June 16, 2005, she went to the emergency room for pain in her tail bone. She reported that she could not sit down. R. 288. X-rays of her sacrum and coccyx, taken on June 17, 2005, were negative except for disc space narrowing at L5-S1. R. 287. A bone scan, taken on June 17, 2005, revealed no abnormal tracer over the sacrum and coccyx. R. 285.

On June 29, 2005, Naquin was seen at Chabert's orthopedic clinic by Jenkins Bush, M.D., an orthopedist, on a referral for complaints of chronic pain which caused her to fall. R. 282. He prescribed physical therapy with lumbar and abdominal exercises followed by a home exercise program. R. 283-84.

On July 12, 2005, Naquin went to the emergency room to have a piece of glass removed from her foot. R 271-76. On July 25, 2005, she was seen at Chabert's orthopedic clinic concerning her shoulder. R. 267. X-rays of her right shoulder, taken on July 25, 2005, revealed no changes since the March 23, 2005 x-rays. There were no bony changes. The joint spaces were well preserved. R. 269. On September 15, 2005, she reported that her back locked up on her. R. 262. On September 28, 2005, Naquin was seen by Dr. Delord for complaints of pain in her back and knees.

R. 259-61. He completed a certificate of mobility impairment and indicated that she was temporarily impaired. R. 235. On October 26, 2005, she failed to appear for an appointment at Chabert's orthopedic clinic. R. 252. On November 22 and 29, 2005, Dr. Delord prescribed medication for Naquin. R. 250-51.

<u>2006</u>

On January 3, 2006, Naquin was seen at Chabert's neurology clinic. She reported pain and occasional falling. R. 355. An MRI of the lumbar spine was recommended. R. 356. She complained of chronic low back pain, depression and weight gain. R. 430-32. On January 27, 2006, she was seen by Dr. Delord for complaints of chronic back pain. R. 352-53. On March 1, 2006, she was seen at Chabert for a broken tooth. R. 351. On March 15, 2006, she went to the emergency room for a broken tooth and severe low back pain. R. 345.

On March 31, 2006, Naquin was diagnosed at Terrebonne Mental Health Center by Dr. Melanie Vega, a psychiatrist, with major depressive disorder, recurrent, severe and without psychotic features. R. 331. In a psychiatric evaluation she denied any intention to harm herself. R. 334-336. Naquin returned to the Mental Health Center on April 28, 2006 and May 8, 2006. R. 332-333.

On July 25, 2006, Naquin was seen by Dr. Delord for low back pain and depression. R. 342-44. An MRI of the lumbar spine, taken on July 31, 2006, revealed mild disc space narrowing at L5-S1. The remainder of the examination was unremarkable. R. 365. A nerve conduction study was consistent with lower extremity neuropathy. There was no EMG evidence of right lumbrosacral radiculopathy. The findings were similar to an August 2004 study. R. 366.

On October 26, 2006, Dr. Vega completed a medical statement concerning depression for

Naquin's disability claim. He found she was moderately impaired in all categories with a marked impairment in her ability to travel in unfamiliar places. There were deficiencies in concentration and repeated episodes of deterioration or decompensation. R. 359-64 and 368-70.

On December 13, 2006, Jonathan M. Shults, M.D., an orthopedist, completed an examination of Naquin for the Commissioner. He reported that she had some problems with her obesity and subjective pain. He did not find any signs of dysfunction. R. 371-77.

<u>2007</u>

On January 4, 2007, Naquin was evaluated by Scuddy Fontenelle, Pd.D., a psychologist, at the request of the Commissioner. He found her limitations either moderate or, in two cases, slight. R. 378-84.

On January 24, 2007, Naquin was seen at Chabert for complaints of low back and leg pain. R. 428-29. On April 24, 2007, Dr. Vega reported that she was not aware of any alcohol or drug use by Naquin. R. 385. On April 26, 2007, Naquin was seen at Chabert for complaints of low pack pain and numbness. R. 426. A chest x-ray, taken on May 14, 2007, was normal for Naquin's age. R. 440. On May 28, 2007, she went to the emergency room for pain in the left side of her mouth and broken teeth. R. 422-25. On June 11, 2007, she was seen by Dr. Delord for complaints of chronic low back pain. R. 419-21. On July 4, 2007, she went to the emergency room for pain in her back and neck. She requested pain medication. R. 412-13.

On August 3, 2007, Naquin was seen at Chabert for complaints of low pack pain and numbness. R. 410. An x-ray of the left knee, taken on August 6, 2007, was negative. R. 416 and 439. On August 20, 2007, she was seen by Dr. Delord for complaints of chronic low back pain. R. 405-07. On August 29, 2007, she was seen at the Chabert dental clinic. R. 404. On September 5,

2007, she was given an epidural steroid injection.  R. 397-400.  On September 13, 2007, she was seen at Chabert for an annual exam.  R. 395-96.

e.      **Plaintiff's Appeal.**

Issue no. 1.      Did the ALJ err by failing to consider all of the evidence from Naquin's treating doctors and to present good cause for rejecting the evidence?

Naquin contends that:  (a) the ALJ improperly denied controlling weight to the opinion of Dr. Delord; (b) the ALJ lacked good cause to reject Dr. Delord's opinion of May 5, 2005 ®. 244-45); © the ALJ failed to re-contact Dr. Delord; and (d) in giving great weight to the consultative examinations, the ALJ ignored the findings by Dr. Shults which were positive as to her claim.

Dr. Delord was the treating internist for Naquin.  The records demonstrate that she saw Dr. Delord regularly from at least March 14, 2003 ®. 217) to August 20, 2007 ®. 405-07).  On May 5, 2005, Dr. Delord complete a two page form providing information on Naquin's physical abilities and limitations.  R. 244-45.  By circling the appropriate place, Dr. Delord indicated that Naquin possessed the following abilities: work for two hours; stand at one time for 30 minutes; sit at one time for no more 30 minutes; lift 10 pounds on a frequent basis; bend occasionally; and manipulate her hands constantly.  He reported that: Naquin needed to elevate her legs occasionally during the day; she suffered from moderate pain; and she had chronic complaints of pain in multiple areas, including her back for which there was an abnormal CT scan.  Id.  A CT scan of the lumbar spine was made at Chabert on June 10, 2004.  The impression was "[d]isc generation with vacuum disc phenomenon and bulging of the L5-S1 disc.  No evidence of focal herniation on this study."  R. 227.

On October 26, 2004, after the CT scan and before Dr. Delord's report, Naquin was seen by

a consulting orthopedist, Dr. Cenac. At that time she was working as a cook and cashier.[2] Dr. Cenac reported that:

> Based upon this examination I find no objective evidence of orthopedic mechanical dysfunction or neurological deficits which would require any physical restrictions or limitations. She is employable at any level of physical activity that she would like to pursue.

R. 140. On June 17, 2005, after Dr. Delord's report, x-rays of the sacrum and coccyx were taken. Except for the disc space narrowing at L5-S1, they were negative. R. 287. On June 29, 2005, Naquin was seen by Dr. Bush, an orthopedist at Chabert. The notes of his examination are silent on any limitations for Naquin. He prescribed physical therapy for the lumbar and abdomen, twice a week for eight weeks, to be followed by a home exercise program.

On January 3, 2006, a neurologist at Chabert recommended an MRI of the lumbar spine which was done on July 31, 2006. R. 356 and 365. It revealed:

> Mild disc space narrowing at L5-S1 with desiccation of the L5 disc and a posterior disc bulge. Mild facet degenerative change and evidence of encroachment along the anterior thecal sac and asymmetrical encroachment along the epidural fat greater on the right than the left. Clinical correlation suggested.

R. 365. The remainder of the examination was unremarkable. Id.

On December 13, 2006, Dr. Shults completed a consulting orthopedic examination. R. 371-73. His findings on her examination were negative except he noted: difficulty walking on tiptoes and heels, including a need to support herself with one hand on the examination bed; and marked positive straight leg rise sign at 40 degrees on the right side. R. 373. His impression included the following:

> She has three noted negative studies, including a CT scan, MRI scan and EMG study,

---

[2] Based on Dr. Cenac's report and Naquin's testimony at the May 9, 2006, she worked at a convenience store from at least October 2004 (R. 140) through May 2005 (R. 445).

showing no specific problems with lumbar radiculopathy. She states she has a rather high need for pain medications. . . . Positives on examination today are few. She has a positive straight leg rise sign on the right at about 40 degrees with severe pain radiating to her back; however, this did not appear when she was siting Pertinent negatives, I do feel there is some degree of exaggeration with her statements on ambulatory and sitting endurance. She stated she could only walk 60ft before sitting down or, as she specifically stated, a quarter of a block. When she departed the office she walked the entire length of the hallway, which is 200ft, without even slowing down.

In conclusion, I feel she does have some problems, mainly her obesity and subjective pain, which cannot really be quantified. I do not find any signs on her examination of any dysfunction severely inhibiting her ability to perform at least some form of employment.

R. 373. On September 5, 2007, she was given an epidural steroid injection in her back. R. 400-01.

In <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985), the ALJ rejected the treating physician's opinion that the claimant was totally disabled. In reversing and remanding, the Fifth Circuit stated,

This court has repeatedly held that ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. There are exceptions to this principle. The ALJ may give less weight to a treating physician's opinion when "there is good cause shown to the contrary," as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight," is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.

770 F.2d at 485. "[W]hen good cause is shown, less weight, little weight, or even no weight may be given the physician's testimony." <u>Id.</u>; <u>Perez v. Barnhart</u>, 415 F.3d 457, 465-66 (5th Cir. 2005).

The ALJ rejected Dr. Delord's May 5, 2005 opinion for the following reasons: the objective evidence suggested Naquin was capable of lifting more than 10 pounds with restrictions included in the RFC; there was no need for her to elevate her legs occasionally during the day; she could sit/stand/walk if allowed to alternate positions; the cane was not medically prescribed; she only used

a cane for ambulation because she was told she could; she was obese; weight loss was recommended; and she stopped physical therapy because of subjective complaints of pain. R. 29.

The objective evidence provided the ALJ with good cause to give less weight to Dr. Delord's opinion and great weight to the opinions of Drs. Cenac and Shults. X-rays, a CT scan and an MRI revealed only mild narrowing of the L5-S1 disc space which was consistent with her age and size. R. 227-38, 287 and 365. There were no positives on Dr. Cenac's examination. For example, he found no atrophy in either lower extremity above or below the knee joints. R. 140. Dr. Shults found few positives on his examination and pertinent negatives. R. 373. The examination by the Chabert orthopedist was silent about positives or negatives. The orthopedist prescribed physical therapy which demonstrates that Naquin was not so limited that she could not participate in physical therapy and at-home exercises. R 282-83. Dr. Delord, an internist, links his statement of Naquin's limitations to her complaints of chronic back pain, subjective symptoms, and the CT Scan, an objective report. Two orthopedists, Drs. Cenac and Shults, considered the same complaints, looked at report of the same CT Scan, and found no limitations.

Pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e), the Commissioner is required to re-contact a treating source "when the evidence . . . from (the) treating physician . . . is inadequate for us to determine whether you are disabled." The evidence was not inadequate. The medical records cover more than four years of treatment at Chabert. The first x-ray of the lumbar spine was taken on March 14, 2003. Thereafter there were more x-rays, a CT Scan and an MRI. She was seen by orthopedists and a neurologist at Chabert. The Commissioner sent her to two orthopedists. There was adequate evidence for the ALJ to determine Naquin was not disabled. The ALJ was not required to re-contact Dr. Delord.

Naquin urges that the ALJ failed to note positive findings from Dr. Shults' examination. An ALJ is not required to articulate specifically the evidence that supported his decision and discuss the evidence that was rejected. Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ did note that Dr. Shults found that Naquin had some problems, mainly her obesity and her complaints of subjective pain. He also noted that Dr. Shults observed that she was able to walk without an assistive device, she had a normal gait and station, and when she left his office she walked the entire length of the 200 foot hallway without slowing down. R. 371-73. In addition to according great weight to the findings of Drs. Shults and Cenac, the ALJ emphasized that Naquin was not at all credible. R. 29-30.

Naquin contends that the ALJ improperly denied controlling weight to the opinion of Dr. Vega, a psychiatrist. Her first visit to Dr. Vega was on March 31, 2006. She was referred by Dr. Delord for a psychiatric evaluation. R. 337. Naquin reported that her psychiatric symptoms impaired her ability to work and that she had recent thoughts that life was not worth living. She denied thoughts about suicide, doing harm to herself, or plans to take her life. R. 337. She reported a history of alcohol abuse eleven years prior to the evaluation. R. 338. She identified her mother and boyfriend as persons who support her recovery. R. 338. She described cross stitching, television and cross-word puzzles as the types of activities she enjoyed. R. 338. She was diagnosed with major depressive disorder, recurrent, severe and without psychotic features. R. 331 and 336. A return appointment was scheduled for April 28, 2006. At that time her medication was adjusted. R. 333. She returned on May 8, 2006. The notes report that she was feeling good because of the power of God and positive thinking. She was getting along better with the persons around her. She looked forward to her disability hearing on May 9, 2006. R. 333.

On October 26, 2006, Dr. Vega completed two medical statements for Naquin's disability claim. The diagnosis was unchanged. She noted that the following applied to Naquin: anhedonia or pervasive loss of interest in all activities; sleep disturbances; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking. She possessed moderate limitations in the activities of daily living and social functioning. Dr. Vega found deficiencies of concentration and repeated episodes of deterioration or decompensation in work or work-like settings. Dr. Vega indicated that Naquin was moderately impaired for all work limitations, except she was markedly impaired for the ability to complete a normal work day and to use travel in unfamiliar places. R. 359-64.

On January 2, 2007, Naquin was seen by Dr. Fontenelle. On testing and during the psychological assessment she displayed low average abilities. R. 379-80. Dr. Fontenelle also diagnosed her with major depression disorder, recurrent, and severe. He described her limitations as slight or moderate. R. 381-82.

Naquin contends that the ALJ improperly denied controlling weight to the opinion of Dr. Vega, and lacked good cause to reject Dr. Vega's opinion of October 26, 2006 ®. 359-64). The ALJ rejected Dr. Vegas' conclusion because: there was insufficient evidence in the record to document the existence prior to the alleged onset date of January 15, 2005 of a mental impairment that resulted in Naquin's decompensation in a work-like setting; she stopped working and applied for disability benefits before any diagnosis of major depression; she had a GAF of 50 on the evaluation by Dr. Fontenelle which suggested she was capable of work activity; and Dr Fontenelle found that she was capable of understanding, remembering and carrying out simple, non-complex jobs. R. 29-30.

The report of Dr. Fontenelle, an examining psychologist, presented the ALJ with reliable

medical evidence which controverted Dr. Vega's opinion. With this report, the ALJ could reject Dr. Vega's opinion. <u>Newton v. Apfel</u>, 209 F. 3d 448, 453 (5th Cir. 2000). The factors cited by the ALJ presented him with good cause to reject Dr. Vega's opinion. In addition, Dr. Vega's opinion is not supported by the evidence. Dr. Vega's record demonstrate that, after the initial evaluation on March 31, 2006, Naquin returned a month later on April 28 and her medication was increased. She returned on May 8, 2006, about ten days later, and reporting feeling well. She did not report any symptoms of depression. The next report of a visit was October 26, 2006, when Dr. Vega completed the forms. There are no records of any other visits to Dr. Vega. The last medical record for Naquin is the report of her annual exam at Chabert on September 13, 2007. She was described as sexually active. R. 395. Her appearance was well groomed. Her mood and affect were appropriate. She was scheduled to return in a year. R. 395-96.

The ALJ properly evaluated the medical opinions in the record and accorded them proper weight.

<u>Issue no. 2</u>.     Did the ALJ's hypothetical question include all of Naquin's impairments?

Naquin contends that the ALJ's hypothetical question did not incorporate all of the psychological limitations by Dr. Vega in her statement. <u>See</u> R. 359-64. The ALJ was not required to include these limitations in the hypothetical question because the ALJ rejected Dr. Vega's conclusions. R. 29-30. As determined above, there was good cause for the ALJ to reject Dr. Vega's conclusions.

<u>Issue no. 3</u>.     Did the ALJ err in failing to determine that Naquin could maintain employment?

Naquin contends that the ALJ failed to consider whether her degenerative disc disease and depression prevented her from maintaining employment. In <u>Perez v. Barnhart</u>, 415 F.3d 457 (5th Cir.

2005), the Fifth Circuit stated:

> Perez argues that under the Fifth Circuit's decision in *Watson v. Barnhart,* 288 F.3d 212 (5th Cir.2002), the ALJ was required to find not only that the claimant's ailments do not prevent him from obtaining employment, but also that the claimant will be able to maintain employment. The Commissioner takes the position that *Watson's* conclusion has been undermined by the more recent Fifth Circuit case of *Frank v. Barnhart,* 326 F.3d 618 (5th Cir.2003). We agree with the Commissioner.
>
> This court made clear in *Frank* that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Id.* Rather, " *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination. *See id.* Perez has not made the requisite showing.

415 F.3d at 464-65. As an example of evidence that might necessitate a separate finding on a claimant's ability to maintain employment, the Fifth Circuit cited evidence that degenerative disc disease prevented the claimant from maintaining employment because every number of weeks she lost movement in her legs. Id. at 465.

Naquin testified that her back "locks up" on her and caused her to fall. R. 471-72. She reported this condition to Chabert. R. 157-59, 161, 183, 312-14 and 324. This testimony and evidence does not rise to the level of impairment found sufficient in Perez to require a specific finding regarding Naquin's ability to maintain employment. Moreover, Naquin's testimony regarding her limitations is subject to the ALJ's determination that she was not completely credible. R. 29.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 14) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 11) be DENIED.

**<u>OBJECTIONS</u>**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 9th day of February, 2009.

**SALLY SHUSHAN**
**United States Magistrate Judge**